We will move to the fifth case of the day, which is, let's see, Mr. Sparre v. the Department of Labor, which is appeal number 18-1105 and number 18-2348. And Mr. Betz, if you'd wait just a moment, please. Thank you, Your Honor. May it please the Court, I am Kevin Betz on behalf of the petitioner, Mr. John Sparre. Mr. Sparre was in all ways a loyal and faithful employee for almost two decades of Norfolk Southern. He made reports to the Federal Railroad Safety Administration, at least five, that are not in dispute as to their legitimacy. And he was terminated over these reports of phantom safety inspections that were critical to the safety of the public as well as his fellow employees. On that issue in this case are two items that Mr. Sparre seeks from this Court. First, for this Court to accept jurisdiction, and two, to reverse the grant of summary judgment by the administrative law judge at the Department of Labor. As to the jurisdiction issue, the question is, what did Congress express by clear and convincing evidence about Mr. Sparre's right to judicial review by this Court? There is no dispute that only upon a showing of clear and convincing evidence of legislative intent by Congress should the courts restrict access to judicial review. That is, quote-unquote, case law from Lindell v. Office of Personnel Management, 470 United States Supreme Court 768, pinpoint site 778-79. And also, the case out of the Southern District of Indiana, Green v. United States Department of Agriculture in the year 2000, is also a similar case that provides highly persuasive analysis of the issues involved in determining what Congress says as opposed to what is said by the administrative agency. And further, to extinguish or limit a judicial review, there must be such clear and convincing evidence. Now, to reach if there is jurisdiction in this case, I have mapped out a simple three-step process under the case law. The governing federal statute states the petition for review to the United States Court of Appeals, the Seventh Circuit in this case, must be filed not later than 60 days after the date of issuance of the final order of the Secretary of Labor. That is pursuant to 49 U.S.C. 42121B4A, as well as 49 U.S.C. 20109D4. That is the direct quote from the United States Congress, and that is the clear and convincing evidence of their intent. To solve the riddle of the jurisdiction, we now only need to know when the date of the issuance of the final order of the Secretary of Labor occurs, because that's what is left open from that quote, from that language from the United States Congress. The date of the issuance of the final order of the Secretary of Labor, according to the Department of Labor, which has the authority to determine when an issuance of a final authority occurs, is 14 days after the ALJ's decision. In other words, the ALJ issues a decision, and the Department of Labor has issued regulations that say the decision of the ALJ will become a final order of the Secretary of Labor. That is pursuant to the Code of Federal Regulations 29 CFR 1982.109E. You take the issuance of the ALJ, and if you let 14 days run, as occurred in this case, then you can come seek judicial review within 60 days to this court for judicial review. Now, my learned colleagues will surely point out there is 29 CFR 1982.110A, in which the Department of Labor attempts, and probably has in many cases up until now, to restrict and extinguish judicial review by stating any party desiring to seek review, including judicial review. Now, this is in the regulation of a decision of the ALJ must file a written petition for review with the ARB. That is the Department of Labor, in regulatory language, restricting or extinguishing the judicial review by an individual. That is expressly barred by case law of this court and other courts, and as well as there is no clear and convincing evidence that that was Congress's intent to in any way extinguish or restrict the right to judicial review in such a way as written by 29 CFR 1982.110A. The only other expression besides the 60 days after the issuance of the final order of the Secretary of Labor is if a hearing with the ALJ is not requested, that's after a preliminary decision is issued in the process of the Department of Labor. In other words, if you don't ask for a hearing with an ALJ within 30 days, Congress said, you're done. No more judicial review. Those are the only two times that Congress in federal statute spoke to the restriction or extinguishment or extinction of a judicial review by an individual. And so nothing stated by Congress other than those two occasions extinguish or limit the judicial review, especially to add any clear and convincing evidence regarding such restriction as done by the Department of Labor. There is also an equitable tolling argument that we make in this matter, and I have it on good authority that counsel for a petitioner in the next case has an argument about equal protection and the arbitrary nature of the 14-day trigger that eliminates and restricts the right to judicial review. And we agree with that as well, that in essence, it's an arbitrary application of 14 days that has nothing to do with the purpose as set forth by Congress to protect whistleblowers from retaliation in their employment. As to the merits of the case, and I see my time is running down and I wanted to save some for rebuttal, so I'll end it there and then use the rest for rebuttal. Thank you, Mr. Betz. Thank you. For the defendants, you're dividing your time, is that correct? Yes. Ms. Sterritt, for the Department of Labor. Good morning, Your Honor. In the Department's view, the issues in this case really are very simple. It's whether Mr. Spahr is required to follow the Department of Labor regulations which set forth a mandatory administrative appeal in order for him to preserve his right to come to this court for judicial review. We submit that Mr. Spahr did not comply with a mandatory appeal restriction or requirement in the FRISA regulations, and so he did not obtain a final order. The decision of the ALJ was not a final order at the time that it was issued. I would even submit that it did not become a final order 14 days after it was issued. In fact, what happened was that Mr. Spahr filed a late appeal. He did file an appeal, but he filed it late. Instead of the 14-day deadline, he filed it 30 days later. And then he came to this court and asked this court to review the ALJ's decision while the ARB still had sitting in front of it his administrative appeal. So, in fact, he had never achieved or received a final order from the Secretary of Labor at the time that he came to this court in January asking this court to review the ALJ's decision. Now, it is possible under the regulations for an ALJ decision to become a final order. What he would have had to do, as set forth in the Notice of Appeal Rights that was sent to him, is he would have had to file a timely petition and then wait to see if the ARB was going to accept or decline to review his case. If the ARB took no action and he filed a timely petition for review, he could assume that his decision would become final, and at that time he would have 60 days to come to this court. But that's not what happened. You know, Mr. Spahr seems to think that the regulatory requirement that he appealed to the ARB within 14 days is unique and directly contrary to the terms of the FRSA. Is it, in fact, unique for a regulation as opposed to the statute to impose this sort of exhaustion requirement? I mean, I gather from your brief that it is not. Yes, Your Honor. What the statute provides is that you have to obtain a final order from the Secretary of Labor. So there is an administrative exhaustion process. You have to file a complaint. It has to be investigated. You have the right to object and seek a hearing. You have the right to get a decision from an ALJ. None of those procedures within the Department of Labor are set forth in any of the whistleblower statutes. We administer 22 different whistleblower statutes. This one is for the railroads. We have another one for mass transit systems. We have another one for airlines. There's, as I said, there are almost 20 of these. There's one under the Food Safety Modernization Act, which my counsel is going to be arguing for you next. And they all have essentially the same procedure. You must file a complaint with the Secretary of Labor and then wait. Go through the administrative process, have your hearings, file your objections, whatever you need to do. And when you get the final order of the Secretary of Labor, you know, whether that's five minutes or five years, that's the point at which you have the right to judicial review. So I would submit, contrary to what my colleague stated, we don't restrict in any way our right to judicial review. All we require is that you allow the Secretary of Labor and the Administrative Review Board, which has been delegated, properly delegated, and set forth in regulations, that the Administrative Review Board speaks for the Secretary. They have been delegated the authority to speak for the Secretary. The ALJ may or may not, because an ALJ's decision is essentially a recommended decision. And it can be reversed by the Secretary. When the ARB issues its final decision, that's when we know what the Secretary's outcome, what the decision has been on the administrative level. So I would submit that Mr. Spahr simply chose not to follow the regulations. He was required to follow the regulations. And for that reason, his appeal, his direct appeal to this court of the ALJ decision was premature. And this court does not have subject matter jurisdiction to consider those arguments. Now, on the second issue, the equitable tolling matter, as I said, he did file a late appeal. When he filed his appeal, he requested that the Administrative Review Board consider his case, even though it was late. And the reasons that he gave were essentially that his attorneys were busy, his attorneys were out of the office, they didn't expect the decision to come in around Thanksgiving holidays, someone was traveling. He said to the Administrative Review Board that one of his attorneys had relied on incorrect regulation, had thought that they had 30 days to file instead of 14 days. And that's why they filed on the 30th day. And when the ARB issued its ruling, which was the final order in this case, which was issued in May, several months later, they found that the real reason that he filed late was because his attorneys simply made a mistake, they miscalculated the deadline, and that's why they filed it on the 30th day. Now, he's made a different argument to this court, but I would submit that the finding of the Secretary, the final order of the Secretary in this case, is that the reason he missed the deadline was because his attorneys were too busy to meet the deadline and that that does not rise to the level of extraordinary circumstances, which is the standard for equitable tolling before the ARB. And I would just submit that his arguments that he showed good cause and he showed excusable neglect and he showed that people just didn't get their mail or they weren't reading their mail or that Mr. Spahr himself personally didn't get notice because he was on the road, even though his attorneys did get notice, all of these excuses have been rejected. They were rejected by the Administrative Review Board, which held that essentially his claims amounted to garden variety negligence. There was nothing extraordinary about them. He wasn't misled in any way by either the department or by the railroad. There's simply no basis for him to claim that equitable tolling should have been awarded. And so the Department of Labor, the Administrative Review Board, had the discretion to decline his request for equitable tolling, which is what happened here. So we would submit that there's abundant case law stating that garden variety negligence by an attorney does not rise to the level of equitable tolling and that the department was within its discretion to decline to extend his deadline. Thank you, Your Honors. Thank you. Thank you, Ms. Starrett for Norfolk Southern. Okay, Mr. Loftus. May it please the Court, Barry Loftus for Norfolk Southern Railway Company. We are the intervenors in this case. We join all of the arguments of the Department of Labor in our brief. We don't believe that the merits are properly before this Court, but to the extent the Court wants to hear a little bit on the merits, I would like to just address that in my brief time. This case was extensively litigated before the Administrative Law Judge. Extensive depositions were taken, and through all that, we proved to the ALJ that while Mr. Spahr engaged in protective conduct on the FRSA, he was unable to show any retaliatory motive or that retaliation was a contributing factor to his adverse employment result. He was terminated for speeding in violations of federal regulations and company rules. He was afforded a hearing under the Collective Bargaining Act where he appeared. He had a union representative, and he admitted to speeding in that hearing. Can you give us a feel, Mr. Loftus, on whether, because a lot of us may not have the train experience. Is the speeding that bad, or is it an aggregation of the violations over the course of a few years that resulted in the termination? When you are speeding in a locomotive, that one time subjects you to dismissal, excessive speeding. And in fact, Mr. Spahr, earlier in his career, had a speeding violation that caused a collision with another locomotive and injured somebody. And under federal regulations, if you have what's called excessive speeding, and the facts showed in this case that he was doing twice the limit, it might be, he was 20 miles an hour, but this is a locomotive. Very, very heavy piece of equipment going twice as fast as the timetable says it should. And our rules state that one instance of excessive speeding subjects you to termination, and the federal government requires us to decertify locomotive engineers for excessive speeding pending resolution of the investigation. So, but anyway, the individuals who were involved in his FRA report in 2010 had nothing to do with his termination, and the four managers who were involved in the termination had no knowledge of his protected activity. That was our case, and we proved that through extensive briefing and depositions with the court below. I see my time is ending. If there's any questions, we request that you grant the relief requested by the Department of Labor. Thank you. Thank you. Mr. Loftus. Rebuttal, Mr. Betz. Thank you, Judge Brennan, for your very appropriate question, and indeed we engaged a 50-year railroad expert in the safety and speeding issues. And that expert, who was found to be credible, had the credentials of a 50-year industry expert, said that it was not just unreasonable for any finding of speeding by Mr. Spahr. He said it was irresponsible in a signed affidavit, and he further said that it was so baseless, the termination of Mr. Spahr, that it was fraudulent to say that he was terminated for the reasons that were given by Norfolk Southern. So for Norfolk Southern to say it was just an average run-of-the-mill termination is absolutely false. They had no disputing evidence on that issue. Secondly, the ALJ ignored that Mr. Spahr was treated more harshly than every employee in the history of Norfolk Southern. There was no comparator to the harshness for the small infractions that Mr. Spahr committed for which the punishment was doled out for Mr. Spahr. That was ignored. Those two pieces of evidence were ignored by the administrative law judge. Further, the administrative law judge imposed that there must be direct knowledge of Norfolk Southern decision-maker to terminate, and that should not be required, and that's an issue of first impression by this court. If I could take a few more seconds, I will just wrap up. Further, the ALJ denied our access to the material evidence of native data that could show whether he actually sped or not because that was not proven at all. Finally, as to jurisdiction, the real issue at stake is whether there is clear and convincing evidence of this 14-day trigger that would eliminate the cutoff for judicial review, and that must be analyzed, whether there's clear and convincing evidence by Congress. Nothing that was said. Thank you, Your Honor. All right. Case is taken.